### 3911.  DANNIE *v.* CITY OF ATLANTA.

HILL, C. J.  This case is controlled by the decision of this court in the case of *Cotton* r. *Atlanta,* ante, 397 (73 S. E. 683).

                                          *Judgment reversed.*

DECIDED JANUARY 30, 1912.

Certiorari; from Fulton superior court—Judge Pendleton.  November 28, 1911.

*Walter A. Sims,* for plaintiff in error.

*J. L. Mayson, W. D. Ellis Jr.,* contra.

---

### 3912.  DANNIE *v.* CITY OF ATLANTA.

1. This case is fully controlled by the decision of this court in *Cotton* v. *Atlanta,* ante, 397 (73 S. E. 683).
2. An ordinance which makes it unlawful to occupy or allow to be occupied any portion of a house to be used as a house of ill fame, or disorderly house, in the city of Atlanta, means occupancy which contributes in some manner to the unlawful character of the house, and does not preclude an innocent and lawful occupancy of a room or a portion of a house which may in other parts thereof be used for disorderly and immoral purposes.

DECIDED JANUARY 30, 1912.

Certiorari; from Fulton superior court—Judge Pendleton.  November 28, 1911.

*Walter A. Sims,* for plaintiff in error.

*J. L. Mayson, W. D. Ellis Jr.,* contra.

HILL, C. J.  An ordinance of the City of Atlanta, enacted under charter authority, makes it punishable for any person to occupy or allow to be occupied a house or a portion of the house as a house of ill fame. City Code of Atlanta, § 1837.  In *Cotton* v. *Atlanta,* ante, 397 (73 S. E. 683), it is held that this or-

dinance created no offense different from that covered by the Penal Code (1910), § 382, and that it was therefore invalid, under the rule that a municipal corporation can not punish for an offense against the criminal laws of the State. It is insisted on the part of the city that the ordinance creates a different offense from that created by the penal statute of the State, in that it makes it unlawful for any person to occupy any portion of the house used as a house of ill fame in the city of Atlanta. We do not agree with this view. The purpose of the ordinance is to suppress disorderly houses and to maintain the peace, health, order, and good government of the city, and, in making punishable the occupancy of any portion of a house of this character, it contemplated occupancy of such character as to maintain or contribute to the maintenance of a house of the kind prohibited. We do not think that it was intended to make it unlawful for a person to occupy a room in a house of ill fame or disorderly house, unless such person, while occupying a room therein, was in some way contributing to the unlawful character of the house. If the occupant of the room had no notice that the other portion of the house was being conducted as a house of ill fame, or possibly if he did know that fact and in no way contributed to its unlawful character, he would not violate this ordinance; and we think that the words "occupy any portion of a disorderly house" necessarily carry with them the meaning that the occupancy must be for unlawful purposes. In other words, we think that one could innocently occupy a portion of a disorderly house without having anything whatever to do with the maintaining and keeping of such a house, and it is only the element of maintaining and keeping a house of this character that both the ordinance and the statute are intended to punish. We therefore think that the ordinance is fully covered by the State statute, and for that reason is invalid.

*Judgment reversed.*